**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN COLWELL, | 3:10-cv-00669-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| ROBERT BANNISTER, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Preliminary Injunction. (Doc. #16.)[1] Defendants have opposed. (Doc. # 37.) After a thorough review, the court recommends that the motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff John Colwell (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 7) 1.)[2] The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC) and Lovelock Correctional Center (LCC). (*Id.* at 1, 3.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Dr. R. Bruce Bannister, Medical Director of NDOC, and Howard Skolnik, former Director of NDOC. (*Id.* at 2; Defs.' Oppo.

---

[1] Refers to the court's docket number.

[2] Unless otherwise noted, all page number references are to the court docket page numbers.

(Doc. # 37) at 2.)[3]

Plaintiff alleges that he was diagnosed as having a cataract in his right eye in 2003, and currently has no vision in the right eye. (Doc. # 7 at 3.) He asserts that during his yearly physical with Dr. Snyder in October 2001, he complained of total loss of vision in his right eye, and a cataract consult was ordered. (Doc. # 7 at 4.) On October 23, 2002, Plaintiff saw a private physician in Carson City, who recommended cataract surgery. (*Id.*) In September of 2003, the Utilization Review Panel (URP) refused Plaintiff's request for cataract surgery. (*Id.*)

On September 12, 2009, Plaintiff requested an eye exam and cataract consult, and on October 6, 2009, was examined by Dr. Fischer. (Doc. # 7 at 3.) According to Plaintiff, Dr. Fischer opined there was no damage to the right eye, but recommended a cataract consult. (*Id.*) On February 17, 2010, Plaintiff was informed that Dr. Scott had discontinued the cataract consult on September 13, 2009. (*Id.*) On February 18, 2010, Plaintiff asserts that Dr. Gedney told him that he did not fit the criteria for a cataract consult because NDOC has a "one eye only" policy. (*Id.*) He grieved the issue, and the prison responded that cataract surgery is a cosmetic, elective, non-emergency procedure, and is considered non-essential. (*Id.* at 4.)

Plaintiff claims that as a result of the loss of sight in his right eye, he bumps into people and things, and his left eye tires when he is reading or watching television. (Doc. # 7 at 6.) He also asserts that his blindness has resulted in heated conflict with other inmates with the potential for physical harm. (*Id.*)

Plaintiff claims that the conduct of Defendants rises to the level of deliberate indifference to his serious medical need in violation of the Eighth Amendment. (Doc. # 7 at 5.) He seeks to recover compensatory damages as well as declaratory and injunctive relief. (*Id.* at 11.)

---

[3] Plaintiff's Complaint also references Dr. Snyder, Dr. Fischer, Dr. Scott, and Dr. Gedney, however, Plaintiff has not named these individuals as defendants. Plaintiff was advised in the screening order, "plaintiff is the master of his own litigation and he will be required to amend his complaint to identify these defendants, if that is his desire." (Doc. # 6.) The Scheduling Order entered on March 7, 2011, required any motion joining additional parties to be filed on or before May 6, 2011, absent a showing of good cause. (Doc. # 13.) Plaintiff has not done so, and therefore, any request to add these parties in the future will not be received favorably.

On screening, the court found that Plaintiff stated a colorable claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Doc. # 6.)

Plaintiff now moves for a preliminary injunction, requesting an order that Defendants provide Plaintiff with proper available treatment to restore vision in his right eye. (Doc. # 16.)

## **II. LEGAL STANDARD**

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high…This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood,

3

of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives…when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)…operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may

courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

**1. Likelihood of success on the merits**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

**a. Standard-Eighth Amendment deliberate indifference to serious medical need**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and quotations omitted).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). "Budgetary constraints, however, do not justify cruel and unusual punishment." *Id*.

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in

nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865 F.2d at 201 (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion

1 regarding the best course of medical treatment does not amount to deliberate indifference);
2 *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a
3 prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To
4 establish that a difference of opinion amounted to deliberate indifference, the inmate "must
5 show that the course of treatment the doctors chose was medically unacceptable under the
6 circumstances" and that the course of treatment was chosen "in conscious disregard of an
7 excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.
8 1996) (citations omitted).

### b. Plaintiff's argument

Plaintiff argues that total blindness in his right eye as a result of his cataract constitutes a serious medical need, and Defendants refusal to permit the recommended cataract surgery constitutes deliberate indifference. (Doc. # 16 at 1-2.) Plaintiff provides the court with his medical kites and grievances related to this issue. (Doc. # 16-1 at 9-32.)

The court notes that Plaintiff has failed to authenticate the evidence he submits in support of his motion. Plaintiff is reminded that if he wishes to rely on evidence in support of a motion, the evidence must authenticated, which means Plaintiff should provide a declaration under penalty of perjury stating that he has personal knowledge that the documents he seeks to have the court consider as evidence are true and correct copies of what he claims them to be. *See* Fed. R. Evid. 901; *see also Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 972 n. 7 (9th Cir. 2003) (failure to satisfy authentication requirements justifies disregard of documents by court when reviewing the motion).

### c. Defendants' argument

First, Defendants argue that Plaintiff does not suffer from a serious medical need. (Doc. # 37 at 5 ("Plaintiff's right eye cataract does not constitute an objectively serious medical need.").) Defendants reason that Plaintiff's daily activities, which include meditation, reading, a correspondence course, computer class, yard time, attending worship service, and playing cards, are not affected by his eye condition. (*Id*.) Defendants concede that Plaintiff has alleged that he runs into inmates, but contend that there are "no documented incidents of bumping

7

1  into other inmates or the consequent altercations," and Plaintiff never made such complaints.
2  (*Id.*)

3   Second, Defendants argue that Plaintiff cannot demonstrate deliberate indifference.
4  (Doc. # 37 at 5.) Defendants argue, rather, that Plaintiff's claim merely amounts to a difference
5  of opinion concerning whether surgery is medically necessary. (*Id.*) Defendants further argue
6  that Plaintiff cannot show that the treatment course chosen by Defendants was medically
7  unacceptable under the circumstances, and in conscious disregard of an excessive risk to
8  Plaintiff's health. (*Id.*)

9   The court notes that Defendants support their opposition to Plaintiff's motion for
10 summary judgment with references to Plaintiff's medical records and various declarations,
11 however, Defendants failed to file these exhibits in connection with their opposition. Instead,
12 Defendants merely reference the court's docket number containing the exhibits, which were
13 filed in support of their pending motion for summary judgment. (*See* Doc. # 37, referencing
14 Doc. # 33.) On this occasion, the court need not consider these exhibits because, as set forth
15 below, the Plaintiff has not met his burden of establishing he is entitled to equitable relief.
16 However, in the future, if Defendants wish to support a particular motion with evidence, that
17 evidence should be attached to the motion it supports, so that the motion is complete in and
18 of itself.

19   **d. Analysis**
20    **i. Serious medical need**

21  Whether Plaintiff's alleged total blindness in his right eye as a result of his cataract is a
22 serious medical need is not as clear cut an issue as Defendants suggest (Doc. # 37 at 5). As
23 stated above, conditions that are "serious" in nature include "an injury that a reasonable doctor
24 or patient would find important and worthy of comment or treatment; the presence of a
25 medical condition that significantly affects an individual's daily activities; or the existence of
26 chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60. A reasonable doctor would
27 certainly find, and more than one doctor did find here, that Plaintiff's cataract was important
28 and worthy of comment or treatment. (Doc. # 7 at 4; Doc. # 37 at 2.) While Defendants claim

8

1 Plaintiff's eye condition does not affect his daily activities and has not caused him chronic and
2 substantial pain, Plaintiff claims that he bumps into things and people; his left eye tires when
3 he is reading or watching television; and his eye condition has resulted in heated conflict with
4 other inmates with the potential for physical harm. (Doc. # 7 at 6.) Accordingly, the court finds
5 that Plaintiff suffers from a serious medical need.

### ii. Deliberate indifference

Even if Plaintiff suffers from a serious medical need, he must still establish Defendants' deliberate indifference. The court finds Plaintiff has failed to demonstrate a likelihood of success on the merits with respect to the deliberate indifference prong of his Eighth Amendment claim.

The underlying facts that give rise to Plaintiff's claim appear to be largely undisputed. An optometrist recommended right eye cataract surgery for Plaintiff, which was rejected by the URP. (Doc. # 7 at 3-4; Doc. # 37 at 2.) Plaintiff appears not to have raised the issue again until 2009, when he requested an eye exam and cataract consult. (Doc. # 7 at 3; Doc. # 37 at 2.) Plaintiff was seen by an optometrist in October of 2009, who identified a mature cataract in Plaintiff's right eye. (*Id.*) Plaintiff was initially recommended for a cataract consult, but the consult was ultimately discontinued by Dr. Scott. (*Id.*) Defendants acknowledge Plaintiff claims he has bumped into people and things, and has gotten into altercations with other inmates as a result of his condition, but maintain that he never complained or documented these events. (Doc. # 37 at 5; Doc. # 7 at 6.)

Plaintiff's claim centers on the URP's denial or delay in approving right eye cataract surgery as recommended by an optometrist, but he has not established that this decision led to further injury to his eye. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (delay in medical treatment must lead to further injury to support a claim for deliberate indifference).

Moreover, it appears that the determination made by the URP to deny the right eye cataract surgery as non-essential amounts to a difference of opinion regarding the course of treatment to take with respect to Plaintiff's condition. *See* McGuckin, 974 F.2d at 1059;

9

1  *Sanchez*, 891 F.2d at 242; and *Franklin*, 662 F.2d at 1344. For a difference of opinion to rise
2  to the level of deliberate indifference, Plaintiff must establish that the course of treatment
3  chosen was "medically unacceptable under the circumstances," and was chosen "in conscious
4  disregard of an excessive risk" to Plaintiff's health. *Jackson*, 90 F.3d at 332. The facts presented
5  simply do not meet this threshold. Plaintiff has presented no evidence to establish that the
6  decision made by the URP was medically unacceptable.  Nor has Plaintiff demonstrated that
7  the denial of right eye cataract surgery was made in conscious disregard of an *excessive risk* to
8  his health.

9  Accordingly, the court finds Plaintiff has not established a likelihood of success on the
10 merits on his Eighth Amendment claim.

11 **2.  Irreparable injury**

12 Plaintiff must demonstrate that irreparable injury is likely in the absence of an
13 injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to
14 prevent the possibility of some remote future injury." *Id.*  at 22 (citations omitted).

15 Plaintiff argues that in the absence of injunctive relief, he will suffer irreparable harm
16 because in the absence of cataract surgery his blindness could become permanent. (Doc. # 16
17 at 3.) Moreover, he argues that he is "an accident waiting to happen," and would be "suffer
18 through life unable to fend for himself." (*Id.*, Doc. # 16-1 at 4-5.)

19 Defendants argue that Plaintiff will not suffer irreparable injury in the absence of
20 injunctive relief for the following reasons: (1) cataracts are not classified as emergencies for
21 purposes of urgent care; (2) cataracts do not cause pain; and (3) Dr.  Scott noted Plaintiff's
22 ability to function within the prison setting and non-intervention with respect to Plaintiff's
23 right eye presents no further health risk to Plaintiff.  (Doc. # 37 at 5-6.)

24 While Plaintiff speculates that his condition, if left untreated, could lead to permanent
25 blindness, he provides no medical support to back up his conjecture. In addition, while he
26 argues he is "an accident waiting to happen," he does not point out any specific event which he
27 can attribute to his eye condition that has led or will lead to imminent irreparable harm.  As
28 stated above, the possibility of remote future harm will not support an award of injunctive

relief.

Therefore, the court finds Plaintiff has not made a sufficient showing with respect to this factor.

### 3. Balance of hardships

A party seeking injunctive relief "must establish...that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

Plaintiff asserts that the harm he will suffer in the absence of injunctive relief is greater than any harm that would be suffered by Defendants. (Doc. # 16 at 3-4.) Defendants do not address the balance of hardships factor. (*See* Doc. # 37.)

Plaintiff simply has not demonstrated he will suffer any harm in the absence of injunctive relief. Therefore, he cannot establish the balance of hardships tips in his favor.

### 4. Public interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff asserts that the public interest will not be harmed by providing him with medical treatment, rather, providing this care and protecting Plaintiff's constitutional interests are in the public interest. (Doc. # 16 at 4.)

Defendants do not address the public interest factor. (*See* Doc. # 37.) Presumably, they would contend that the cost associated with cataract surgery that they have deemed non-essential is not in the public interest.

Here, it is undeniable that the State of Nevada will be forced to bear the costs associated with a cataract surgery. While the court recognizes that there is a public interest in providing care that has been deemed medically necessary to Plaintiff, the URP has determined this procedure is non-essential, is not a medical emergency, and is not medically necessary. Accordingly, at this juncture, the public interest factor weighs in Defendants favor.

/ / /

/ / /

### 5. Conclusion

In sum, the court finds Plaintiff has not met his burden justifying the extraordinary remedy of a preliminary injunction. Therefore, the court recommends that Plaintiff's Motion for Preliminary Injunction be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Preliminary Injunction (Doc. # 16).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: December 8, 2011

_William G. Cobb_
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE