**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN COLWELL, | 3:10-cv-00669-LRH (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| ROBERT BANNISTER, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. #33.)[1] Plaintiff has opposed (Doc. # 39) and Defendants replied (Doc. # 40). After a thorough review, the court recommends that Defendants' motion (Doc. # 33) be granted.

## I. BACKGROUND

At all relevant times, Plaintiff John Colwell (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 7) 1.)[2] The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC) and Lovelock Correctional Center (LCC). (*Id.* at 1, 3.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Dr. R. Bruce Bannister, Medical

---

[1] Refers to the court's docket number.

[2] Unless otherwise noted, all page number references are to the court docket page numbers.

Director of NDOC, and Howard Skolnik, former Director of NDOC. (*Id.* at 2.)[3]

Plaintiff alleges that he was diagnosed as having a cataract in his right eye in 2003, and currently has no vision in the right eye. (Doc. # 7 at 3.) He asserts that during his yearly physical with Dr. Snyder in October 2001, he complained of total loss of vision in his right eye, and a cataract consult was ordered. (Doc. # 7 at 4.) On October 23, 2002, Plaintiff saw a private physician in Carson City, who recommended cataract surgery. (*Id.*) In September of 2003, the Utilization Review Panel (URP) refused Plaintiff's request for cataract surgery. (*Id.*)

On September 12, 2009, Plaintiff requested an eye exam and cataract consult, and on October 6, 2009, was examined by Dr. Fischer. (Doc. # 7 at 3.) According to Plaintiff, Dr. Fischer opined there was no damage to the right eye, but recommended a cataract consult. (*Id.*) On February 17, 2010, Plaintiff was informed that Dr. Scott had discontinued the cataract consult on September 13, 2009. (*Id.*) On February 18, 2010, Plaintiff asserts that Dr. Gedney told him that he did not fit the criteria for a cataract consult because NDOC has a "one eye only" policy. (*Id.*) He grieved the issue, and the prison responded that cataract surgery is a cosmetic, elective, non-emergency procedure, and is considered non-essential. (*Id.* at 4.)

Plaintiff claims that as a result of the loss of sight in his right eye, he bumps into people and things, and his left eye tires when he is reading or watching television. (Doc. # 7 at 6.) He also asserts that his blindness has resulted in heated conflict with other inmates with the potential for physical harm. (*Id.*)

Plaintiff claims that the conduct of Defendants rises to the level of deliberate indifference to his serious medical need in violation of the Eighth Amendment. (Doc. # 7 at 5.) He seeks to recover compensatory damages as well as declaratory and injunctive relief. (*Id.* at 11.)

On screening, the court found that Plaintiff states a colorable claim for deliberate

---

[3] Plaintiff's Complaint also references Dr. Snyder, Dr. Fischer, Dr. Scott, and Dr. Gedney, however, Plaintiff has not named these individuals as defendants. Plaintiff was advised in the screening order, "plaintiff is the master of his own litigation and he will be required to amend his complaint to identify these defendants, if that is his desire." (Doc. # 6.) The Scheduling Order entered on March 7, 2011, required any motion joining additional parties to be filed on or before May 6, 2011, absent a showing of good cause. (Doc. # 13.) Plaintiff has not done so.

1  indifference to a serious medical need in violation of the Eighth Amendment. (Doc. # 6.)

2  Defendants now move for summary judgment, arguing: (1) Plaintiff's right eye cataract
3  does not constitute an objective sufficiently serious medical need; (2) Plaintiff cannot
4  demonstrate Defendants were deliberately indifferent to a serious medical need; (3)
5  Defendants are entitled to qualified immunity; (4) Plaintiff cannot establish Defendant
6  Skolnik's personal involvement in any alleged constitutional violation; and (5) Plaintiff cannot
7  recover money damages against Defendants in their official capacities. (Doc. # 33.)

8  Plaintiff argues that total blindness in his right eye as a result of his cataract constitutes
9  a serious medical need, and Defendants refusal to permit the recommended cataract surgery
10 constitutes deliberate indifference. (Doc. # 39 at 4-5.)

11 The court notes that Plaintiff appears to indicate he has claims under the Americans
12 with Disabilities Act (ADA) and Rehabilitation Act (RA) (Doc. # 39 at 11-14), but these claims
13 are not part of this action, and will therefore not be addressed by the court. (*See* Doc. # 6.)[4]

## **II. LEGAL STANDARD**

15 "The purpose of summary judgment is to avoid unnecessary trials when there is no
16 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
17 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in
18 favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing
19 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate
20 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that
21 there is no genuine issue as to any material fact and that the movant is entitled to judgment as
22 a matter of law." *Id*. (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the
23 material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.
24 at 250.

25 The moving party bears the burden of informing the court of the basis for its motion,

---

[4] The court notes that Plaintiff attempted to file a First Amended Complaint, which was stricken for failure to comply with Federal Rule of Civil Procedure 15 and for being untimely pursuant to the Scheduling Order. (Doc. # 31.)

3

together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

4

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

## III. DISCUSSION

### A. EIGHTH AMENDMENT STANDARD

The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and quotations omitted).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court]

1  need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865
2  F.2d 198, 200 (9th Cir. 1989) (citation omitted). "[S]tate prison authorities have wide
3  discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d
4  769, 771 (9th Cir. 1986). "Budgetary constraints, however, do not justify cruel and unusual
5  punishment." *Id*.

6      "A 'serious' medical need exists if the failure to treat a prisoner's condition could result
7  in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974
8  F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in
9  nature include "an injury that a reasonable doctor or patient would find important and worthy
10 of comment or treatment; the presence of a medical condition that significantly affects an
11 individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60;
12 *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding
13 that inmate whose jaw was broken and mouth was wired shut for several months demonstrated
14 a serious medical need).

15     If the medical needs are serious, Plaintiff must show that Defendants acted with
16 deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a
17 high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate
18 indifference entails something more than medical malpractice or even gross negligence. *Id*.
19 Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*,
20 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows
21 of and disregards an excessive risk to inmate health or safety; the official must both be aware
22 of the facts which the inference could be drawn that a substantial risk of serious harm exists,
23 and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*
24 *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858).
25 "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they
26 deny, delay, or intentionally interfere with medical treatment" or the express orders of a
27 prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865
28 F.2d at 201 (internal quotation marks and citation omitted). Where delay in receiving medical

treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion regarding the best course of medical treatment does not amount to deliberate indifference); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

**B. ANALYSIS**

In ruling on Plaintiff's Motion for Preliminary Injunction (Doc. # 16), the court found that Plaintiff suffers from a serious medical need; however, the court finds that Plaintiff has not established Defendants were deliberately indifferent to his serious medical need.

The underlying facts that give rise to Plaintiff's claim appear to be largely undisputed. In 2002, an optometrist recommended right eye cataract surgery for Plaintiff, which was rejected by the URP. (Doc. # 7 at 3-4; Doc. # 33 at 2, Doc. # 35-1 (Ex. A) at 36-37.) Plaintiff appears not to have raised the issue again until 2009, when he requested an eye exam and cataract consult. (Doc. # 7 at 3; Doc. # 33 at 2.) Plaintiff was seen by an optometrist in October of 2009, who identified a mature cataract in Plaintiff's right eye. (Doc. # 7 at 3-4, Doc. # 33 at 2, Doc. # 35-1 (Ex. A) at 9.) Plaintiff was initially recommended for a cataract consult, but the consult was ultimately discontinued by Dr. Scott. (*Id.*, Doc. # 33-1 (Ex. D) (Decl. of Dr.

7

1  Scott).)

2  Plaintiff's claim centers on the URP's denial or delay in approving right eye cataract 3 surgery as recommended by an optometrist, but he has not established that this decision led 4 to further injury to his eye. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 5 404, 407 (9th Cir. 1985) (per curiam) (delay in medical treatment must lead to further injury 6 to support a claim for deliberate indifference).

7  According to Dr. Bannister, a cataract does no damage to the eye and can be removed 8 at any time in the future when overall visual acuity requires further treatment. (Doc. # 33-1 9 (Ex. C) (Decl. of Dr. Bannister) at ¶ 8.) He further asserts that delaying removal causes no 10 harm and prevents exposing a patient to the risks of the procedure, and does not lead to 11 permanent vision loss. (*Id.* at ¶¶ 12-13.) Plaintiff's medical records do not indicate any 12 recommendation for immediate surgery on Plaintiff's right eye, and medical providers have 13 determined that surgery is not medically warranted in light of Plaintiff's overall visual acuity 14 and ability to adequately function. (*Id.* at ¶ 14.)

15  The determination made by the URP to deny the right eye cataract surgery as non-16 essential amounts to a difference of opinion regarding the course of treatment to take with 17 respect to Plaintiff's condition. *See* McGuckin, 974 F.2d at 1059; *Sanchez*, 891 F.2d at 242; and 18 *Franklin*, 662 F.2d at 1344. For a difference of opinion to rise to the level of deliberate 19 indifference, Plaintiff must establish that the course of treatment chosen was "medically 20 unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive 21 risk" to Plaintiff's health. *Jackson*, 90 F.3d at 332. The facts presented simply do not meet this 22 threshold. Plaintiff has presented no evidence to establish that the decision made by the URP 23 was medically unacceptable. Nor has Plaintiff demonstrated that the denial of right eye cataract 24 surgery was made in conscious disregard of an *excessive risk* to his health.

25  Accordingly, the court finds that summary judgment should be granted in Defendants' 26 favor. Because of this conclusion, the court need not evaluate Defendants' arguments 27 regarding qualified immunity, the personal participation of Defendant Skolnik, or official 28 capacity damages.

8

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **<u>GRANTING</u>** Defendants' Motion for Summary Judgment (Doc. # 33).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 13, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE